**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**JANE DOE**

       **Plaintiff,**                        **No.**  1:18-cv-236

**v.**

**THE BOARD OF COUNTY COMMISSIONERS
FOR THE COUNTY OF OTERO; OTERO COUNTY
SHERIFF BENNY HOUSE;
OTERO COUNTY DETENTION CENTER
DIRECTOR CAROLYN BARELA;
ERIC SCOTT KINDLEY**

       **Defendants.**

                                           **Jury Trial Requested**

## COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND TORTIOUS CONDUCT

COMES NOW Plaintiff Jane Doe, by and through the undersigned counsel, Carolyn M. "Cammie" Nichols and Maggie H. Lane of Rothstein Donatelli LLP, and hereby brings the following causes of action under 42 U.S.C. § 1983, the Fourteenth Amendment of the United States Constitution, the New Mexico Tort Claims Act (NMSA 1978, §§ 41-4-1, *et seq*.), and New Mexico common law.

### INTRODUCTION

This suit arises from transport officer Eric Scott Kindley's extended abuse of Plaintiff Jane Doe during her transport from Washington State to Otero County, New Mexico, on an arrest warrant for a probation violation.  With little to no oversight, Otero County sent Kindley alone to retrieve Plaintiff Doe from Washington State, and allowed for Kindley to have unrestricted access to, and control over, Doe, a petite 53-year-old woman, throughout the course of the long trip back to New Mexico.  Kindley began intimidating and threatening Plaintiff Doe almost immediately, and told her repeatedly throughout the trip that if anything happened, no one

would ever believe her.  Somewhere within the expansive cornfields of the Midwest, where no one would ever see or hear Plaintiff Doe, Kindley pulled over repeatedly to sexually assault Plaintiff Doe.  Despite Plaintiff Doe's reporting of the abuse upon arrival in New Mexico, Defendant Kindley continued to transport, and sexually abuse, women across the county.

**PARTIES**

1.      Plaintiff Jane Doe is on parole and living in Albuquerque, New Mexico.  At the time of the incidents described herein, March/April 2016, Plaintiff Doe was being transported to Otero County on an arrest warrant for a probation violation.  After Plaintiff's probation was revoked, she was committed to the custody of the New Mexico Department of Corrections.  Prior to her commitment to the Department of Corrections, Plaintiff Doe was housed at the Otero County Detention Center in Alamogordo, New Mexico.

2.      Defendant Board of County Commissioners for the County of Otero ("Otero County") is a duly authorized governmental agency under the laws of the State of New Mexico.  Defendant Otero County is a governmental entity and local public body as defined in the New Mexico Tort Claims Act (NMSA 1978, § 41-4-3(B) and (C)).  Under NMSA 1978, § 4-46-1, all suits against a county are to be brought in the name of the board of county commissioners of that county.  As such, the county may sue or be sued in its name.  Defendant Otero County is a "person" for purposes of 42 U.S.C. § 1983.  The Otero County Detention Center ("OCDC") located in Alamogordo, New Mexico, is a facility of Otero County.  Defendant Otero County also has the authority to own, maintain, and manage the OCDC and possesses final policy and decision-making authority over OCDC.

3.      Defendant Carolyn Barela, upon information and belief, was at all times material hereto a resident of Otero County, New Mexico, and employed as the Director of OCDC.  Upon

information and belief, at all times material hereto, Defendant Barela was responsible for the policies, practices, and customs of OCDC.  Upon information and belief, Defendant Barela was also responsible for the screening, hiring, training, retention, supervision, discipline, counseling, and control of OCDC's correctional officers, staff, contractors, and agents.  Upon information and belief, at all times material hereto, Defendant Barela was the final decision-maker, a policy-maker for OCDC, and supervised its operation and management on a daily basis.  Upon information and belief, as the individual in charge of OCDC's overall operation and daily management, Defendant Barela was responsible for the implementation of, and adherence to, OCDC's policies, procedures, and customs.  At all times material hereto, Defendant Barela was acting under color of law and within the scope of her duties.  In connection with Plaintiff's Section 1983 claims, Defendant Barela is sued in her official capacity.

4.      At all times material hereto, Benny House was the Sheriff of Otero County.  Upon information and belief, at all times material hereto, Defendant House was responsible for the policies, practices, and customs of the Otero County Sheriff's Office.  Upon information and belief, Defendant House was also responsible for the screening, hiring, training, retention, supervision, discipline, counseling, and control of the Sheriff's Office's staff, contractors, and agents.  Upon information and belief, at all times material hereto, Defendant House was the final decision-maker, a policy-maker for the Sheriff's Office, and supervised its operation and management on a daily basis.  Upon information and belief, as the individual in charge of the Sheriff's Office's overall operation and daily management, Defendant House was responsible for the implementation of, and adherence to, Sheriff's Office policies, procedures, and customs.  At all times material hereto, Defendant House was acting under color of law and within the scope of

his duties.  In connection with Plaintiff's Section 1983 claims, Defendant House is sued in his official capacity.

5.      At all times material hereto, Defendant Eric Scott Kindley transported individuals arrested on warrants on behalf of OCDC.  Upon information and belief, Defendant Kindley is a resident of California, who is currently in the custody of the United States Marshal awaiting trial on charges of aggravated sexual abuse.  Defendant Kindley acted under color of law and within the course and scope of his duties and employment.  With regard to the Section 1983 claims, Defendant Kindley is sued in his individual capacity only. For purposes of Plaintiff's state law claims, however, Defendant OCDC is vicariously liable for Defendant Kindley's acts and omissions.

6.      With respect to Plaintiff's New Mexico Tort Claims Act claims, the acts and omissions complained of herein all constitute a basis for liability against Defendant Otero County and its agents, and come within the scope of the waivers of immunity contained within the New Mexico Tort Claims Act, NMSA 1978 §§ 41-4-1, *et seq*.

7.      With respect to Plaintiff's New Mexico Tort Claims Act claims, Defendant Otero County received actual notice of Plaintiff's intent to file claims under the New Mexico Tort Claims Act. *See* 41-4-16(B).

### JURISDICTION AND VENUE

8.      Jurisdiction over the federal claims is proper under 28 U.S.C. §§ 1331 and 1343. Supplemental jurisdiction over the state claims is proper under 28 U.S.C. § 1367(a) because the state claims and the federal claims derive from the same common nucleus of operative facts.

9.      Venue is proper in New Mexico under 28 U.S.C. § 1391(b) as all defendants are subject to the court's personal jurisdiction.

4

## FACTUAL ALLEGATIONS

### Plaintiff Doe's transport from Washington State to New Mexico

10.     In 2009, Plaintiff Doe moved from her home in Seattle, Washington, to Alamogordo, New Mexico, in order to care for her ailing mother.

11.     Ms. Doe's mother passed away in 2011, and Ms. Doe remained in Alamogordo, New Mexico.

12.     In April of 2014, Ms. Doe was charged with violating NMSA 1978, §77-01A-06(D), after her dog bit a neighbor.

13.     Roughly a year later, in April of 2015, Ms. Doe pleaded no contest to this charge and was sentenced to serve a period of probation.

14.     In June of 2015, after an unsuccessful attempt to have her probation transferred to Washington State, Ms. Doe absconded and returned to Washington State.  A bench warrant was subsequently entered for her arrest.

15.     On March 11, 2016, Ms. Doe self-surrendered in Snohomish County Washington, and was booked into the Snohomish County Correctional Facility.

16.     Upon information and belief, Ms. Doe remained in the custody of Snohomish County until March 26, 2016, when Defendant Eric Scott Kindley arrived to transport her back to Otero County.

17.     In March of 2016, Ms. Doe was 53 years old.  Ms. Doe is 5 feet, 2 inches tall, and weighs approximately 165 pounds.

18.     At this time, upon information and belief, Defendant Eric Scott Kindley owned Special Operations Group 6, a company that contracted with Otero County, either through the

Otero County Sheriff's Office or the Otero County Detention Center, to transport individuals, like Ms. Doe, who were arrested on out-of-state warrants.

19.     When Ms. Doe was released from Snohomish County, she was the only transportee, male or female, in Defendant Kindley's custody.

20.     Additionally, Defendant Kindley worked alone, without the assistance of another transport officer, male or female.

21.     Ms. Doe observed that Defendant Kindley wore what appeared to be full tactical gear, as though he was a SWAT officer prepared to engage in violent conflict.

22.     When the two left Snohomish County in Defendant Kindley's transport van, headed back to New Mexico, he immediately began addressing Ms. Doe by using a common short-form of her first name, as though there was a level of familiarity between the two.

23.     Ms. Doe had never met Defendant Kindley before, however, and this made her uncomfortable.

24.     Defendant Kindley remarked to Ms. Doe that "we have a long trip ahead of us."

25.     Defendant Kindley also made it clear to Ms. Doe early on that he had information about her personal life and family.  He knew Ms. Doe had a daughter living in Washington, and he knew that she had been divorced.

26.     At some point early in the trip, Ms. Doe noticed the smell of chewing tobacco within the van—a smell she dislikes—and made an offhand remark about the smell.

27.     Defendant Kindley told Ms. Doe not to worry, because he would not kiss her with tobacco in his mouth.

28.     This comment scared Ms. Doe, who would be all alone in a van with Defendant Kindley traveling through remote areas of the country.

29.     Defendant Kindley was very talkative throughout the trip, and spent a great deal of time talking to people on the phone, often discussing very personal and inappropriate topics.

30.     For example, during one such conversation, Ms. Doe overheard Defendant Kindley tell this person that he could not stand women who have had abortions and that it made him want to cut their uteruses out.

31.     Defendant Kindley also bragged to her about things that had happened over his years in the transport business.

32.     For example, Defendant Kindley told Ms. Doe that once when he was transporting two women from Mississippi to New Mexico he let them have sex in the back of the van.

33.     Defendant Kindley also told Ms. Doe that he had a webpage where he posted videos documenting things that happened on the road during his transporting journeys, which he called "rolling with the homies."

34.     Defendant Kindley acted proud of his videos, and recounted stories to Ms. Doe concerning the things he had recorded.

35.     For example, Defendant Kindley told Ms. Doe that one time he had a van full of male transportees, only one of whom was African American.  Defendant Kindley thought it would be funny to put a piece of watermelon only in the African American transportee's lunch, so that he could record the African American transportee's reaction for his webpage.

36.     In telling Ms. Doe about these videos, Defendant Kindley told Ms. Doe that he had not decided if he would record her yet.

37.     Defendant Kindley also told Ms. Doe that if "anything happened" during her transport, no one would believe her.

38.    Upon information and belief, Defendant Kindley stopped at a detention center in Ada County, Idaho, to drop Ms. Doe off for the night.

39.    When they arrived at the detention center, one of the local guards asked Defendant Kindley where the female officer was, as though they would not expect for a male officer to be transporting a female transportee alone.

40.    The following day, March 27, 2016, Defendant Kindley apparently posted a message on a "Group 6, LLC" Twitter account that he was "'#rolling[w]iththehomies'" on to Nebraska for corn husking.  Or not."

41.    Defendant Kindley also appears to have recorded a video that same day, which he posted on an Instagram account entitled "specialoperationsgroup" where, with the camera pointed at him, he said:

> On today's episode of rolling with the homies, we are leaving Boise for Nashville. Unfortunately, we will have to do a little bit of cornhusking in Nebraska.  Even the geese are excited about it.

42.    Defendant Kindley appears to be in his transport van during the recording, and points the camera facing outside, at the view through the window of the vehicle, toward geese on a lawn outside of a large building, possibly a detention center.

43.    Defendant Kindley may have been using the phrase "cornhusking" as sexual innuendo, as the term (as slang) is associated with various sexual acts.

44.    After leaving Idaho, Defendant Kindley transported Ms. Doe through Nebraska, where she was able to sleep off and on.  At some point during the night, Ms. Doe woke up when the van stopped.  She noticed that the van was surrounded by cornfields.

45.    When Plaintiff Doe asked Defendant Kindley why they had stopped, he replied that she should not worry about it, and that "no one will ever believe you."

46.     Defendant Kindley stopped three times in similar locations, in the middle of nowhere, surrounded by cornfields.

47.     During one stop, Ms. Doe noticed Defendant Kindley's glove compartment was open, and that there were syringes within the compartment.

48.     While Ms. Doe was aware that Defendant Kindley had diabetes, based on something he told her during the trip, she had not previously seen him inject insulin.

49.     Ms. Doe is not able to recall exactly what happened to her during these stops, however, she remembers feeling lethargic and nauseous before her lapses in memory.

50.     She recalls, after the feelings of lethargy and nausea and the gaps in her memory, that she would be aware that the van driven by Defendant Kindley was moving again, and her arms hurt, and her handcuffs were inexplicably noticeably tighter than they had been before the van stopped.

51.     Ms. Doe also noticed that her pants felt damp or wet, and that she had vaginal pain, as though she had been penetrated.

52.     At some point that same night, Defendant Kindley stopped at another local detention center, somewhere in Nebraska.

53.     Before Defendant Kindley pulled Ms. Doe out of the back of the van he remarked that "he hoped the girl we pick up in Chicago is more receptive than you."

54.     When Defendant Kindley walked Ms. Doe into the detention center, a female officer seemed to notice that Ms. Doe was unsettled and nervous.

55.     The female officer asked Ms. Doe if she wanted her to wash her clothes, possibly because she noticed that they were wet, muddy, or otherwise visibly dirty.

56.     As Defendant Kindley was right behind her, and Ms. Doe was nervous that he would get angry if she said yes, Ms. Doe declined.

57.     The following day, Defendant Kindley traveled to Chicago, Illinois, in order to pick up another female transportee.

58.     Defendant Kindley and the transportee from Chicago engaged in sexually explicit conversations for much of the trip.

59.     Defendant Kindley even remarked at one point that she was the type of girl he could take home to meet his parents.

60.     Once, when Defendant Kindley stopped in Kentucky, Plaintiff Doe believes she overheard the female transportee tell Defendant Kindley that they should meet up after she was released from prison.

61.     Defendant Kindley quickly responded to her in a panicked fashion that she needed to "shut the fuck up" because they were being recorded.

62.     Defendant Kindley picked up another male transportee in Kentucky, and then another at a local detention center somewhere in Texas.

63.     When they stopped at this facility, Ms. Doe was let out of the van to use the restroom.  A female officer working at the facility again asked Defendant Kindley why he did not have a female officer with him in the van, given that he was transporting women.  This female officer asked for the name of his supervisor and the company he worked for.

64.      Plaintiff noticed that none of the guards from the various detention centers they stopped at along the way seemed to know who Defendant Kindley was, and seemed never to have heard of his company.

65.     After picking up a second male transportee in Texas, Kindley arrived with Ms. Doe in Otero County.

66.     Defendant Kindley again repeated his threat to Ms. Doe that she should not tell anyone about what had happened during her transport.  He said that if she said anything he would make sure she would never return home.

67.     Shortly after arriving at the Otero County Detention Center, Ms. Doe began placing requests through the center's electronic "kiosk," or inmate self-help system, to see a counselor in order to disclose the abuse.

68.     Ms. Doe disclosed the abuse to a counselor while at the detention center.

69.     Ms. Doe also informed a supervising guard that she needed to disclose an incident occurring during transport of a sensitive nature.

70.     Rather than attempting to gather more information from Ms. Doe, the supervising guard apparently told Ms. Doe to contact her lawyer.

71.     Ms. Doe also disclosed the abuse after she was committed to the custody of the New Mexico Department of Corrections

72.     Ms. Doe has received no information concerning the status of any investigation on the part of OCDC, or the New Mexico Department of Corrections concerning the status of an investigation, and is unsure of whether any investigation was ever done into Defendant Kindley's actions, or whether any discipline was subsequently imposed.

73.     As Defendant Kindley continued to provide transportation services to local counties following Ms. Doe's reporting of the abuse (including at least one county in New Mexico, as discussed below), and continued to abuse female transportees, however, Ms. Doe does not believe any investigation or discipline occurred.

**Defendant Eric Scott Kindley and Special Operations Group 6**

74.     Upon information and belief, Eric Scott Kindley owns or owned Group 6, LLC, which was, at least in part, a prisoner transportation service.

75.     Upon information and belief, Defendant Kindley provides such prisoner transportation services to counties under the name "Special Operations Group 6."

76.     Upon information and belief, Defendant Kindley also sells or sold law enforcement clothing to jails under the name "G6tactical," which is believed to be another arm of Group 6, LLC.

77.     Prior to owning Group 6, LLC or Special Operations Group 6, Defendant Kindley owned another prisoner transport company called "Court Services Inc."

78.     Upon information and belief, Court Services Inc., a California company, was suspended after failing to meet tax requirements.

79.     In 2008, Defendant Kindley was charged federally for ordering an employee of Court Services Inc. to carry a gun onto a plane without any authorization to do so.

80.     Defendant Kindley was ultimately acquitted by a jury in that case.

81.     In 2010, an employee of Court Services Inc., who was a convicted felon, pleaded guilty to sexually assaulting a female prisoner during transport.

82.     In that case, Defendant Kindley's employee was transporting a woman from Tennessee to New Mexico, under contract with Lincoln County.

83.     Upon information and belief, Defendant Kindley had a reputation in New Mexico as being abusive towards his transportees.

84.     Plaintiff Doe eventually decided to disclose the sexual abuse to her partner, who (unbeknownst to her at the time) had at one point also been transported by Defendant Kindley.

85.     When she disclosed, before referencing the identity of the transport officer, Plaintiff Doe's partner asked her if the transport officer was Defendant Kindley.

86.     Otero County maintained a contract with Defendant Kindley for prisoner transport services in spite of this history of gross mismanagement of his prisoner transportation companies, including but not limited to the hiring of a convicted felon as a transport officer, and the sexual abuse of another woman who absconded from New Mexico by this same transport officer.

87.     Otero County also maintained a contract with Defendant Kindley when it may have had actual prior knowledge of his abuse of transportees.

88.     In 2017, Defendant Kindley was indicted in multiple jurisdictions on charges of aggravated sexual abuse in violation of 18 U.S.C. § 242, in connection with his transporting of various women across the country on arrest warrants.  *See United States v. Kindley*, 3:17-cr-08147-DLR (D. Arizona June 28, 2017); *United States v. Kindley*, 4:17-cr-00267-DPM (E.D. Arkansas Sept. 12, 2017).

89.     As part of these cases, multiple women have disclosed that Defendant Kindley criminally penetrated them during their transport.

90.     Similar to Ms. Doe's victimization, multiple women have disclosed that Defendant Kindley abused them in remote locations, threatening them to keep them quiet.

91.      Defendant Kindley bragged to these women that he had gotten away with this before, and that if they told anyone, it would be their word against his.

92.     Defendant Kindly bragged to at least one of his victims about the number of women he had transported whom he sexually assaulted and raped, telling her that "all I do is go around and fuck bad bitches."

93.     Defendant Kindley is currently detained and awaiting trial in connection with the above-mentioned criminal cases.

## COUNT I

### 42 U.S.C. § 1983 – Claims against Defendant Kindley

94.     Plaintiff incorporates all preceding paragraphs as if fully stated herein.

95.     In transporting individuals arrested on outstanding Otero County warrants back to Otero County, Defendant Kindley was operating as a state actor on behalf of Otero County, and performing an exclusive government function.

96.     Plaintiff Doe has a right to bodily integrity, to be free from unreasonable seizures, and to be free from unreasonable invasions of her right to privacy under the Fourth Amendment to the United States Constitution and the Fourteenth Amendment to the United States Constitution.  To the extent that Plaintiff Doe, who was serving a probationary sentence at the time of the incidents in question, was a convicted prisoner, she is also protected under the guarantees of the Eighth Amendment to the United States Constitution and the prohibition against cruel and unusual punishment.

97.     Defendant Kindley violated Plaintiff Doe's rights when he threatened to hurt her, threatened to sexually assault her, in fact sexually assaulted her, unreasonably seized her, and invaded her right to privacy.

98.     Defendant Kindley acted with deliberate indifference to these rights, and he carried out, in a constitutionally impermissible manner, the functions he performed on behalf of Otero County.

99.     The deprivations of Plaintiff Doe's rights were not reasonably related to any legitimate interest in security or in the safe transportation of Plaintiff Doe to Otero County.

100.     Defendant Kindley engaged in acts and omissions that were egregious, outrageous, fraught with unreasonable risk, and conscious shocking.

101.     The conduct of Defendant Kindley, as alleged herein, were a direct and proximate cause of Plaintiff Doe's injuries and damages.

102.     Defendant Kindley's conduct involved intentional misconduct, recklessness, willfulness, and callous indifference to Plaintiff Doe's rights.  As his conduct was motivated by evil motive or intent, Plaintiff Doe is entitled to recover awards of punitive and exemplary damages against Defendant Kindley in amounts to be determined at trial.

103.     Defendant Kindley is not entitled to qualified immunity for Section 1983 claims.

104.     The constitutional rights Defendant Kindley violated were clearly established prior to March 2016, and any reasonable individual in his shoes would have understood that this conduct would violate Plaintiff Doe's constitutional rights.

## COUNT II

### 42 U.S.C. § 1983 – Claims against Sheriff House and Director Barela

105.     Plaintiff incorporates all preceding paragraphs as if fully stated herein.

106.     Defendants Benny House and Carolyn Barela, as the Sheriff of Otero County and the Director of the Otero County Detention Center, respectively, (collectively "Defendants") had the duty to exercise due care in Otero County's transportation of individuals arrested on warrants.

107.     In addition, Defendants had a duty to properly screen, hire, train, monitor, supervise and discipline subordinate employees and agents engaging in such activities on behalf of the County, activities that are a unique function traditionally and exclusively reserved to local and state government.

15

108.     Defendants had a further duty to ensure that subordinate employees and agents were aware and guided by appropriate policies and procedures so as to respect the constitutional rights of individuals and avoid causing unnecessary harm to individuals, including Plaintiff Doe. As part of these responsibilities, Defendants had a duty to:

a. Conduct reasonable and adequate hiring processes, including appropriate background investigations, to determine whether prospective transport officers were appropriately qualified and had the appropriate temperament and psychological status to act in this capacity;

b. Assure that transport officers received appropriate and adequate training, including at a minimum the amounts required by law, prior to performing such duties;

c. Prepare, adopt, and inculcate appropriate policies, procedures and protocols regarding the transportation of individuals arrested on warrants back to Otero County;

d. Monitor transport officers, including Defendant Kindley, in order to assure that they were complying with applicable policies, procedures and protocols; and

e. Conduct meaningful and proper investigations and impose discipline where appropriate against such officers in order to encourage compliance with policies and to avoid ratification of misconduct and deprivation of constitutional rights.

109.     Prior to March 2016, Defendants knew or reasonably should have known that male transport officers were transporting female transportees alone across the country.  The risk that female prisoners will be subject to invasions of privacy, sexual assault, or otherwise be deprived of their right to bodily integrity was obvious, given the intimate nature of monitoring required and the extreme power imbalances at hand.

110.     Prior to March 2016, Defendants knew or reasonably should have known of Defendant Kindley's gross mismanagement of his transport companies, the past criminal allegations against Kindley himself, and the past criminal conduct of his employees.

111.     Prior to March 2016, Defendants knew or reasonably should have known that their transport officers, including Defendant Kindley, were acting improperly and without

sufficient oversight, and that, due to this lack of supervision, training, and proper hiring, individuals such as Plaintiff Doe would have their rights violated by such transport officers.

112.    Prior to March 2016, Defendants knew or reasonably should have known that certain transport officers, including Defendant Kindley, should never have been hired, lacked adequate training and certification, and were operating without knowledge of or in flagrant disregard of applicable policies, procedures, and protocols in connection with the transportation of individuals arrested on warrants.

113.    Defendants apparently failed to conduct an appropriate investigation into the incident in question after it was disclosed to them, and apparently failed to take disciplinary action against Defendant Kindley, failed to terminate his work with Otero County, and failed to engage in efforts to alert other jurisdictions concerning his violent, criminal actions, as Defendant Kindley continued to transport individuals like Plaintiff Doe around the country following this incident.  By doing so, Defendants encouraged and condoned a post-incident cover up and ratified the wrongful, criminal acts of Defendant Kindley.

114.    Defendants breached the foregoing duties by failing to adopt proper policies, procedures, and protocols, by failing to implement appropriate training, by failing to adequately investigate and discipline Defendant Kindley, and by failing to take other appropriate actions which would have prevented the deprivation of the clearly established constitutional rights of Plaintiff Doe.

115.    Defendants' actions, or failures to act, described above, constituted personal involvement by them in the violation of Plaintiff Doe's constitutional rights and were a cause of the injuries and damages described herein.  In so doing, Defendants acted knowingly or with deliberate indifference to the possibility that a constitutional violation would occur.

116.     Defendants' acts and omissions, as described herein, were the direct and proximate cause of Plaintiff Doe's injuries and related damages, as set forth herein.

### COUNT III

### NMSA 1978, § 41-4-6 New Mexico Tort Claims Act

117.     Plaintiff incorporates the preceding paragraphs as if fully stated herein.

118.     Defendant Otero County and its employees, officials, contractors, and agents, had the duty to operate the Otero County Detention Center and the Otero County Sheriff's Office in a manner that kept individuals, including Plaintiff Doe, safe and free from injury.

119.     Otero County employees, officials, contractors, and agents, including but not limited to Director Barela and Sheriff House, were negligent in their operation of the Otero County Detention Center and Sheriff's Office, in that they failed to take necessary steps to provide for the safety and welfare of Plaintiff Doe and other individuals during their transport to Otero County on arrest warrants.

120.     The transport of individuals back to Otero County on arrest warrants is not an administrative function performed on behalf of the Detention Center and Sheriff's Office. Rather, transportation officers perform an essential function of these buildings—to retrieve and transport individuals that Otero County had jurisdiction over and who were arrested on warrants.

121.     Defendant Kindley, who, upon information and belief, regularly transported individuals back to Otero County, posed a risk to the entire class of individuals arrested on Otero County warrants who were transported by him back to Otero County.

122.     Defendant Otero County's complete failure to exercise reasonable care in its regulation of these transportation services presented a general condition of unreasonable risk.

123. In performing this essential function, the employees, officials, contractors, and agents of Otero County Detention Center and Otero County Sheriff's Office negligently permitted untrained and insufficiently screened male transportation officers, including Defendant Kindley, to, with little to no oversight, transport female officers across the county alone. This foreseeably led to the abuse of vulnerable female transportees, including Plaintiff Doe.

124. In the case of Defendant Kindley, the employees, officials, contractors, and agents of Otero County Detention Center and Otero County Sheriff's Office knew or should have known that Defendant Kindley was unfit to perform this service on behalf of the County.

125. Furthermore, Defendant Kindley, who was performing an exclusive government function as a state actor, capitalized on the extreme power given to him over a very vulnerable class of individuals—individuals under arrest being transported across the country. Defendant Kindley was thus aided in his abuse by his status as a transport officer performing services on behalf of the County, and the County is vicariously liable for these damages.

126. Defendant Otero County is jointly and severally liable for all injuries and damages caused by the actions of its employees, officials, contractors, and agents, under the doctrines of vicarious liability and *respondeat superior*.

127. The above-described conduct of Defendant Otero County and its employees, officials, contractors, and agents, was a direct and proximate cause of the injuries to Plaintiff Doe and the resultant damages described herein.

## COUNT IV

## NMSA 1978, § 41-4-12 New Mexico Tort Claims Act

128. Plaintiff incorporates all preceding paragraphs as if fully stated herein.

129.     Defendants Sheriff Benny House and Director Carolyn Barela (collectively "Defendants"), as law enforcement officers, had the duty in any activity undertaken by them to exercise, for the safety of others, a level of care that would be ordinarily exercised by a reasonable, prudent, and qualified law enforcement officer in light of the nature of the circumstances at the time.  Defendants breached this duty when they failed to in any way monitor or regulate the transportation activities of its transport officers, including Defendant Kindley, or to in any way supervise or train these officers.

130.     This failure caused the assault, battery, false imprisonment, and deprivation of rights, privileges and immunities secured by the laws and constitutions of the United States and New Mexico Plaintiff Doe endured at the hands of Defendant Kindley.

131.     Defendant Kindley, as a law enforcement officer performing an exclusive government function as a state actor, also had the duty in any activity undertaken by him to exercise, for the safety of others, a level of care that would be ordinarily exercised by a reasonable, prudent, and qualified law enforcement officer in light of the nature of the circumstances at the time.

132.     Defendant Kindley breached this duty when he assaulted, battered, and falsely imprisoned Plaintiff Doe, and deprived her of rights, privileges and immunities secured by the laws and constitutions of the United States and New Mexico, causing personal and bodily injury to Plaintiff Doe.

133.     Further, as Defendant Kindley was serving an exclusive government function as a state actor, and capitalized on the extreme power given to him over a very vulnerable class of individuals—individuals under arrest being transported across the country, he was aided in

20

accomplishing his assaults and sexual abuse by his status as a transport officer performing services on behalf of the state, and the County is vicariously liable for these damages.

134.    Defendant Otero County is jointly and severally liable for all injuries and damages caused by the actions of its employees, officials, contractors, and agents, under the doctrines of vicarious liability and *respondeat superior*.

135.    The above-described conduct of Defendants was a direct and proximate cause of the injuries to Plaintiff Doe and the resultant damages described herein.

**PRAYER FOR RELIEF**

136.    Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

137.    As a direct and proximate result of the wrongful and unlawful acts and omissions of all Defendants, as described above, Plaintiff was injured, suffered, and continues to suffer damages, including, but not limited to, severe emotional distress, anguish, suffering, humiliation, depression, psychological injuries, indignities, loss of enjoyment of life, deprivation of constitutional rights, invasion of bodily integrity, and other damages.

138.    As a result of the above-described damages and injuries, Plaintiff Doe is entitled to recover awards of full compensatory damages against all Defendants in amounts to be determined at the trial of this cause.

139.    Plaintiff Doe requests damages in an amount sufficient to compensate her for all injuries and harm she suffered, as well as punitive damages as provided by law, along with costs of this action, pre- and post-judgment interest as provided by law, reasonable attorneys' fees as provided by law, and such other and further relief as proves just.

140.    Plaintiff Doe requests a trial by jury on all issues so triable.

Respectfully submitted,

ROTHSTEIN DONATELLI LLP

*Carolyn M. "Cammie" Nichols 3/9/18*
CAROLYN M. "CAMMIE" NICHOLS
MAGGIE H. LANE
500 4th St., NW, Suite 400
Albuquerque, New Mexico 87102
(505) 243-1443
cmnichols@rothsteinlaw.com
mhlane@rothsteinlaw.com

and

Mark H. Donatelli
1215 Paseo de Peralta
Post Office Box 8180
Santa Fe, New Mexico 87504
(505) 988-8004
mhd@rothsteinlaw.com

*Attorneys for Plaintiff*

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| | |
| **(b)**  County of Residence of First Listed Plaintiff _____ <br> *(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant _____ <br> *(IN U.S. PLAINTIFF CASES ONLY)* <br> NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF <br> THE TRACT OF LAND INVOLVED. |
| **(c)**  Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
         Plaintiff

☐ 2  U.S. Government
         Defendant

☐ 3  Federal Question
         *(U.S. Government Not a Party)*

☐ 4  Diversity
         *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place <br> of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place <br> of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a <br> Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment <br> & Enforcement of Judgment <br> ☐ 151 Medicare Act <br> ☐ 152 Recovery of Defaulted <br> Student Loans <br> (Excludes Veterans) <br> ☐ 153 Recovery of Overpayment <br> of Veteran's Benefits <br> ☐ 160 Stockholders' Suits <br> ☐ 190 Other Contract <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | **PERSONAL INJURY** <br> ☐ 310 Airplane <br> ☐ 315 Airplane Product <br> Liability <br> ☐ 320 Assault, Libel & <br> Slander <br> ☐ 330 Federal Employers' <br> Liability <br> ☐ 340 Marine <br> ☐ 345 Marine Product <br> Liability <br> ☐ 350 Motor Vehicle <br> ☐ 355 Motor Vehicle <br> Product Liability <br> ☐ 360 Other Personal <br> Injury <br> ☐ 362 Personal Injury - <br> Medical Malpractice | **PERSONAL INJURY** <br> ☐ 365 Personal Injury - <br> Product Liability <br> ☐ 367 Health Care/ <br> Pharmaceutical <br> Personal Injury <br> Product Liability <br> ☐ 368 Asbestos Personal <br> Injury Product <br> Liability <br> **PERSONAL PROPERTY** <br> ☐ 370 Other Fraud <br> ☐ 371 Truth in Lending <br> ☐ 380 Other Personal <br> Property Damage <br> ☐ 385 Property Damage <br> Product Liability | ☐ 625 Drug Related Seizure <br> of Property 21 USC 881 <br> ☐ 690 Other <br> <br> **LABOR** <br> ☐ 710 Fair Labor Standards <br> Act <br> ☐ 720 Labor/Management <br> Relations <br> ☐ 740 Railway Labor Act <br> ☐ 751 Family and Medical <br> Leave Act <br> ☐ 790 Other Labor Litigation <br> ☐ 791 Employee Retirement <br> Income Security Act | ☐ 422 Appeal 28 USC 158 <br> ☐ 423 Withdrawal <br> 28 USC 157 <br> <br> **PROPERTY RIGHTS** <br> ☐ 820 Copyrights <br> ☐ 830 Patent <br> ☐ 835 Patent - Abbreviated <br> New Drug Application <br> ☐ 840 Trademark <br> **SOCIAL SECURITY** <br> ☐ 861 HIA (1395ff) <br> ☐ 862 Black Lung (923) <br> ☐ 863 DIWC/DIWW (405(g)) <br> ☐ 864 SSID Title XVI <br> ☐ 865 RSI (405(g)) | ☐ 375 False Claims Act <br> ☐ 376 Qui Tam (31 USC <br> 3729(a)) <br> ☐ 400 State Reapportionment <br> ☐ 410 Antitrust <br> ☐ 430 Banks and Banking <br> ☐ 450 Commerce <br> ☐ 460 Deportation <br> ☐ 470 Racketeer Influenced and <br> Corrupt Organizations <br> ☐ 480 Consumer Credit <br> ☐ 490 Cable/Sat TV <br> ☐ 850 Securities/Commodities/ <br> Exchange <br> ☐ 890 Other Statutory Actions <br> ☐ 891 Agricultural Acts <br> ☐ 893 Environmental Matters <br> ☐ 895 Freedom of Information <br> Act |
| **REAL PROPERTY** <br> ☐ 210 Land Condemnation <br> ☐ 220 Foreclosure <br> ☐ 230 Rent Lease & Ejectment <br> ☐ 240 Torts to Land <br> ☐ 245 Tort Product Liability <br> ☐ 290 All Other Real Property | **CIVIL RIGHTS** <br> ☐ 440 Other Civil Rights <br> ☐ 441 Voting <br> ☐ 442 Employment <br> ☐ 443 Housing/ <br> Accommodations <br> ☐ 445 Amer. w/Disabilities - <br> Employment <br> ☐ 446 Amer. w/Disabilities - <br> Other <br> ☐ 448 Education | **PRISONER PETITIONS** <br> **Habeas Corpus:** <br> ☐ 463 Alien Detainee <br> ☐ 510 Motions to Vacate <br> Sentence <br> ☐ 530 General <br> ☐ 535 Death Penalty <br> **Other:** <br> ☐ 540 Mandamus & Other <br> ☐ 550 Civil Rights <br> ☐ 555 Prison Condition <br> ☐ 560 Civil Detainee - <br> Conditions of <br> Confinement | **IMMIGRATION** <br> ☐ 462 Naturalization Application <br> ☐ 465 Other Immigration <br> Actions | **FEDERAL TAX SUITS** <br> ☐ 870 Taxes (U.S. Plaintiff <br> or Defendant) <br> ☐ 871 IRS—Third Party <br> 26 USC 7609 | ☐ 896 Arbitration <br> ☐ 899 Administrative Procedure <br> Act/Review or Appeal of <br> Agency Decision <br> ☐ 950 Constitutionality of <br> State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1  Original
         Proceeding

☐ 2  Removed from
         State Court

☐ 3  Remanded from
         Appellate Court

☐ 4  Reinstated or
         Reopened

☐ 5  Transferred from
         Another District
         *(specify)*

☐ 6  Multidistrict
         Litigation -
         Transfer

☐ 8  Multidistrict
         Litigation -
         Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
_____

Brief description of cause:
_____

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☐ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**  **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**  **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**  **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**  **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**  **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**  **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**  **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**  **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**  **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.